# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

IN RE:

BIG DADDY GUNS, INC. &
BIG DADDY GUNS 2, INC.,

CASE NO.: 23-10053-KKS
CHAPTER: 11

     Debtor.

_____/

REDSTONE ADVANCE, INC.,

ADV. NO.: 23-01002-KKS

     Plaintiff,

v.

BIG DADDY GUNS, INC., et al.

     Defendants.

_____/

## ORDER DENYING *REDSTONE ADVANCE, LLC'S [SIC] AMENDED MOTION TO REMAND AND ABSTAIN AND MEMORANDUM OF LAW IN SUPPORT* (ECF No. 32)

THIS ADVERSARY PROCEEDING is before the Court on *Redstone Advance, LLC's [sic]*[1] *Amended Motion to Remand and Abstain and Memorandum of Law in Support* ("Remand Motion," ECF No. 32) and *Debtors' Opposition to Redstone Advance Inc.'s Motion to Remand*

---

[1] Plaintiff, Redstone Advance, Inc., erroneously refers to itself as "Redstone Advance, LLC" in the title of the Remand Motion.

("Opposition," ECF No. 33).[2] For the reasons set forth below, the Court finds the Remand Motion is due to be denied. The Court canceled the scheduled hearing as unnecessary.

## BACKGROUND

Big Daddy Guns, Inc. and Big Daddy Guns 2, Inc. ("Debtors"), two of the defendants in the removed action, filed voluntary petitions for relief under Chapter 11 with this Court on March 21, 2023.[3] The Court administratively consolidated those Chapter 11 cases by order dated March 30, 2023.[4] Redstone asserts claims against Debtors and other entities affiliated with Debtors on account of a Merchant Cash Agreement ("MCA").[5] Under the MCA, Redstone paid $4 million to purchase future accounts receivable of Debtors and their affiliates up to

---

[2] Defendants, Big Daddy Guns, Inc. and Big Daddy Guns 2, Inc., refer to themselves as "Debtors" in this adversary proceeding, as does Redstone. For the sake of consistency, the Court will do the same in this Order.

[3] *Voluntary Petition for Non-Individuals Filing for Bankruptcy, In re Big Daddy Guns, Inc.,* Case No. 23-10053-KKS (Bankr. N.D. Fla. Mar. 21, 2023), ECF No. 1; *Voluntary Petition for Non-Individuals Filing for Bankruptcy, In re Big Daddy Guns 2, Inc.,* Case No. 23-10054-KKS (Bankr. N.D. Fla. Mar. 21, 2023), ECF No. 1.

[4] *Order Granting Motion of the Debtors Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure for Entry of an Order Directing the Joint Administration of the Chapter 11 Cases for Procedural Purposes Only (ECF No. 14), In re Big Daddy Guns, Inc.,* Case No. 23-10053-KKS (Bankr. N.D. Fla. Mar. 30, 2023), ECF No. 38; *Order Granting Motion of the Debtors Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure for Entry of an Order Directing the Joint Administration of the Chapter 11 Cases for Procedural Purposes Only (ECF No. 12), In re Big Daddy Guns 2, Inc.,* Case No. 23-10054-KKS (Bankr. N.D. Fla. Mar. 30, 2023), ECF No. 35.

[5] *See Amended Verified Complaint,* ECF No. 1-1.

the face amount of $5.6 million.[6]

In June of 2022, Redstone sued Debtors and their affiliates in state court, alleging that they were in default under the MCA, and seeking *in rem* relief: foreclosure of its alleged security interest in inventory, and replevin ("Replevin Action").[7] On October 22, 2022, after a hearing at which it took evidence and heard argument of counsel, the state court entered an order directing the issuance of a Writ of Replevin in favor of Redstone.[8] Pursuant to that Writ of Replevin, with assistance of various officials, Redstone conducted three (3) seizures of inventory at Debtors' business locations in Gainesville and Ocala, Florida: one on November 14, 2022; another on December 8, 2022; and the third on March 15, 2023.[9] Redstone filed a motion for summary judgment against Debtors and their affiliates on January 6, 2023.[10] Between February 24 and April 10, 2023, three (3) other creditors, RSR Group, Inc. ("RSR"), Wynwood Capital Group, Inc., d/b/a Zen Capital ("Zen"), and Meged Funding Group Corp.

---

[6] *Id.* at ¶ 4.

[7] *Id.* at ¶¶ 9–11, 14 & 19.

[8] ECF No. 33-1, p. 2; ECF No. 33-1, pp. 114–117.

[9] ECF No. 33-1, p. 2. Debtors claim to own the inventory seized, other than certain items they assert belong to third parties. *See Schedule of Property Owned by Third Parties Seized From Debtor BDG 2 by Redstone*, *In re Big Daddy Guns, Inc.*, Case No. 23-10053-KKS (Bankr. N.D. Fla. May 10, 2023), ECF No. 109-1. The Court will refer to the seized inventory, excluding the items owned by third parties, as "seized inventory."

[10] *Id.* at p. 2.

("Meged") joined the Replevin Action, asserting competing liens on the seized inventory and its proceeds.[11]

Notwithstanding the Suggestion of Bankruptcy filed on behalf of Debtors on March 24, 2023, the state court commenced, and counsel for Redstone argued at, a hearing on Redstone's summary judgment motion on March 28, 2023.[12] The state court then conducted a continued hearing on Redstone's summary judgment motion on April 13, 2023, after Debtors removed this action.[13] Debtors allege that their in-house counsel advised the state court of the automatic stay and the removal at the April 13 hearing.[14]

## DISCUSSION

### This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1452(a) and § 1334(b).

Redstone first argues that Debtors have failed to meet their burden to establish that this Court has jurisdiction over this proceeding. Because of the distinction between jurisdiction and whether a proceeding is "core"

---

[11] *Id.*; ECF No. 33-1, pp. 140–142.

[12] ECF No. 33-1, pp. 2–3. This Court does not have a transcript of the state court's March 28 or April 13 hearings. It is unclear whether Redstone argued the summary judgment motion against Debtors as well as its affiliates, or whether Redstone limited its argument to the non-debtor affiliates.

[13] *Id.* at p. 3.

[14] *Id.*

or "non-core,"[15] the Court starts with the applicable statutes.

The statute on which Debtors base the removal is 28 U.S.C. § 1452(a), which provides: "A party may remove any claim or cause of action in a civil proceeding . . . to the district court for the district where such civil action is pending, *if such district court has jurisdiction of such claim or cause of action under section 1334 of [title 28]*."[16] Debtors assert that federal jurisdiction exists over this action under 28 U.S.C. § 1334(b), such that the jurisdictional requirement of 28 U.S.C. § 1452(a) is met.[17] Under 28 U.S.C. § 1334(b), federal courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[18] Debtors maintain that this action is either "core," that is, arising under or in title 11, or related to their Chapter 11 cases. Redstone concedes that this case is related to Debtors' bankruptcy cases but urges the Court to remand or abstain anyway.[19]

---

[15] The determination of whether a proceeding is core or non-core is a separate analysis from jurisdiction. *See Cont'l Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 n.6 (11th Cir. 1999).

[16] 28 U.S.C. § 1452(a) (emphasis added). *See* ECF No. 1, p. 1.

[17] ECF No. 33, p. 14, ¶ 41.

[18] 28 U.S.C. § 1334(b). Congress authorized the district courts to refer these matters to bankruptcy judges for the district. 28 U.S.C. § 157(a). The Northern District of Florida has made such a referral. *See Standing Order of Reference Regarding Title 11*, No. 4:95-mcr-40111-DJ (N.D. Fla. June 5, 2012).

[19] *See discussion, infra,* beginning on p. 14.

**This is a core proceeding over which this Court has jurisdiction.**

Core proceedings include those enumerated in 28 U.S.C. § 157(b). Subsection (1) of § 157(b) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments . . . ."[20] Subsection (2)(A) of § 157(b) provides that "[c]ore proceedings include, but are not limited to, matters concerning the administration of the estate."[21] The remainder of § 157(b)(2) is a non-exclusive list of types of matters included within the definition of "core proceedings."[22]

The words "foreclosure" and "replevin" do not appear in 28 U.S.C. § 157(b)(2)(A)–(P). But Debtors assert, and this Court concurs, that this is a core proceeding under several subsections of 28 U.S.C. § 157(b), including: (b)(2)(A) ("matters concerning the administration of the estate"), (b)(2)(B) ("allowance or disallowance of claims against the estate . . . , and estimation of claims or interests for the purposes of confirming a plan under chapter 11 . . . of title 11"), (b)(2)(K) ("determinations of the

---

[20] 28 U.S.C. § 157(b).
[21] 28 U.S.C. § 157(b)(2)(A).
[22] *See* 28 U.S.C. § 157(b)(2)(A)–(P).

validity, extent, or priority of liens"), and (b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship").[23]

As Debtors point out, Redstone's reliance on *Stern v. Marshall*[24] for the assertion that this is not a core proceeding over which this Court has subject matter jurisdiction is misplaced. In *Stern*, the Supreme Court did not say that bankruptcy courts may not rule on state law counterclaims. Rather, the Supreme Court made clear that bankruptcy courts may not "enter a final judgment on a state law counterclaim" that is not integrally related to the bankruptcy and would not be "resolved in the process of ruling on a creditor's proof of claim."[25] The Supreme Court later clarified that bankruptcy courts may adjudicate non-core matters if the parties expressly or implicitly consent.[26] The Eleventh Circuit once noted: "[w]e

---

[23] ECF No. 33, p. 16, ¶ 45. 28 U.S.C. § 157(b)(2)(A), (B), (K) & (O).

[24] 564 U.S. 462 (2011).

[25] 564 U.S. at 503. *See also Sundale, Ltd. v. Fla. Assocs. Enters., LLC (In re Sundale, Ltd.)*, 499 F. App'x 887, 892–93 (11th Cir. 2012) (*Stern* did not apply to prevent bankruptcy court from exercising jurisdiction to enter final judgment on debtor's state law counterclaims that were integrally related to resolving the creditor's proof of claim); *Talisman Capital Alt. Invs. Fund, Ltd. v. Mouttet (In re Mouttet)*, Case No. 13-22222-CIV-MARRA, 2020 WL 5993925, *21 (S.D. Fla. Oct. 9, 2020) ("The inability [of a bankruptcy court] to render a final judgment on a matter is not the same as lacking subject matter jurisdiction.").

[26] *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 683-84. *See also DiPaola v. Sleepy's LLC (In re Professional Facilities Management, Inc.)*, Adv. Pro. No. 15-3041-WRS, 2015 WL 6501231 (Bankr. M.D. Ala. Oct. 27, 2015).

are mindful that the dependence of the merits of an action on state law . . . does not, in and of itself, mean that the action is non-core."[27]

The instant proceeding is distinguishable from the facts in *Stern* in at least one important respect. Here, unlike in *Stern,* Redstone, Zen, Meged and RSR have all filed claims.[28] This case is also distinguishable from a case on which Redstone relies, *In re Schmidt*.[29]

In *In re Schmidt,* Klein Bank sued companies run by the debtors for breach of security agreement and replevin and sued the debtors on personal guarantees.[30] The debtors and their wives filed Chapter 11 petitions, but none of the corporate defendants in the replevin action filed bankruptcy.[31] The debtors filed notices of removal in the replevin actions, asserting those actions to be core or related to their bankruptcies and

---

[27] *In re Toledo*, 170 F.3d at 1349 (quoting *Matter of Wood*, 825 F.2d 90, 97-98 (5th Cir. 1987) ("Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim.")).

[28] *See In re Big Daddy Guns, Inc.*, Case No. 23-10053-KKS, Claim 12-1; Amended Claim No. 9-2; Amended Claim No. 10-3; Claim No. 7-1. *See also Quality Props., LLC v. Pine Apple Conveyor Serv. Inc. (In re Quality Props. LLC)*, Case No. 10-42783-JJR-11, 2011 WL 6161010, at *6 (Bankr. N.D. Ala. Nov. 29, 2011) ("Unlike the counterclaim in [*Stern*], which addressed an issue that was not integral to the restructuring of the debtor-creditor relationship, the alleged liens in the Removed APs affect the pro rata distribution of the Debtor's assets.").

[29] *Schmidt v. Klein Bank, (In re Schmidt),* 453 B.R. 346 (B.A.P. 8th Cir. 2011).

[30] *Id.* at 348.

[31] *Id.*

claiming a legal interest in the property being replevied.[32] The bankruptcy court denied the bank's motions to remand the replevin actions, holding those actions to be core proceedings, and the bank appealed.[33] The Eighth Circuit B.A.P. reversed, holding that the state court replevin actions pending against non-debtor entities removed by the debtors did not involve bankruptcy causes of action and were not core proceedings.[34] But the court specifically noted that "if Klein Bank were to file proofs of claim in the Debtors' bankruptcy cases based on the guaranties, the resolution of those claims would be core, inasmuch as the allowance or disallowance of claims against a debtor's bankruptcy estate is a matter that arises under the Bankruptcy Code . . . ."[35] The Eighth Circuit B.A.P. made clear that its ruling was based in large part on the fact that the entities the bank sued for replevin did not file bankruptcy; only the guarantors did.[36] The facts here are completely the reverse:

---

[32] *Id.* at 348–49.

[33] *Id.* at 349. The bankruptcy court also declined to exercise discretionary abstention. *Id.*

[34] *Id.* at 349–51.

[35] *Id.* at 351.

[36] "[I]f a principal wishes to use the Bankruptcy Code to protect the assets of its corporation, or wants a bankruptcy court to decide causes of action against the corporation, it needs to file a bankruptcy case on behalf of the corporation." *Id.* at 351. The B.A.P. remanded the case to the bankruptcy court for further findings on whether the claims could be timely adjudicated in state court. *Id.* at 352.

Debtors are defendants in the Replevin Action, Debtors claim ownership of the seized inventory, and Redstone has filed a claim.[37]

While foreclosure proceedings based on state law, like replevin actions, are generally deemed non-core,[38] courts have found foreclosure actions to be core matters under 28 U.S.C. §§ 157(b)(2)(B), (K) & (O) under certain circumstances.[39] The facts in *In re CRD Sales & Leasing* are similar to those at bar; the holding in that case is instructive.[40]

In *In re CRD Sales & Leasing*, a creditor filed a pre-petition foreclosure action against the debtor and other parties.[41] After filing bankruptcy and removing the foreclosure action to the bankruptcy court,

---

[37] *See also City of Sioux City, Iowa v. Civic Partners Sioux City, LLC (In re Civic Partners Sioux City, LLC),* Adv. Pro. No. 11-9045, 11-9046, 2012 WL 761361, *9 (Bankr. N.D. Iowa, March 8, 2012) ("The fact that both creditors here filed their proof of claims, and based those claims on the claims in their adversary complaints, makes them core proceedings under [*In re*] *Schmidt*.").

[38] *In re CRD Sales & Leasing v. C.R. Davidson Co.*, 231 B.R. 214, 218 (Bankr. D. Vt. 1999) (citing *Aetna Life Ins. Co. v. Danbury Square Assocs., Ltd. P'ship*, 150 B.R. 544, 547 (Bankr. S.D.N.Y. 1993)).

[39] *See In re CRD Sales & Leasing v. C.R. Davidson Co.*, 231 B.R. at 219 ("We find that we must hear the foreclosure action as a core matter under 28 U.S.C. §§ 157(B)(K) & (O) because the foreclosure proceeding, while based on state law, is so intertwined with the undoubtedly core subordination claim and the request to determine the validity and extent of Bank's lien."); *City of Sioux City v. Civic Partners Sioux City, LLC (In re Civic Partners Sioux City, LLC)*, Case No. ADV 11-9045, 2012 WL 761361, at *10 (Bankr. N.D. Iowa Mar. 8, 2012) ("While the Bank filed the foreclosure claim, it also made a claim for a money judgment which serves as the basis for its proof of claim. Debtor has asserted a counter-claim which seeks to set-off the value of that counter-claim against any money judgment or entitlement to proof of claim. That alone brings the foreclosure proceeding and the intertwined counter-claim into the category of core proceedings."). *See also In re USDigital, Inc.*, 461 B.R. 276 (Bankr. D. Del. 2011); *In re M. Paolella & Sons, Inc.*, 161 B.R. 107, 116 (Bank. E.D. Pa. 1993).

[40] *In re CRD Sales & Leasing v. C.R. Davidson Co.*, 231 B.R. 214 (Bankr. D. Vt. 1999).

[41] *Id.* at 217.

the debtor sued the foreclosing creditor for equitable subordination and a determination of the extent and validity of the creditor's claim.[42] The foreclosing creditor asserted that mandatory abstention applied; the bankruptcy court disagreed, stating:

> We find that we must hear the foreclosure action as a core matter under 28 U.S.C. § 157(b)(K) & (O) because the foreclosure proceeding, while based on state law, is so intertwined with the undoubtedly core subordination claim and the request to determine the validity and extent of Bank's lien.
> In so doing, we do not ignore the fact that foreclosure actions are usually deemed non-core. When inextricably intertwined with the equitable subordination claim, however, a core claim that must be heard here, we think it is safe to say the entire proceeding is core.[43]

A proceeding can be core even when issues regarding the validity and priority of the liens involve state law because "state law is applicable throughout bankruptcy proceedings to determine the hierarchy of claims for the restructuring of debtor-creditor relations."[44] One bankruptcy court found, under similar facts, that to resolve claims in the removed proceeding would require the court to decide the validity and priority of

---

[42] *Id.*

[43] *Id.* at 219–20 (citing and quoting *In re STN Ent.,* 73 B.R. 470, 483 (Bankr. D. Vt. 1987) ("When a proceeding is in part core and in part non-core related, we may determine the entire proceeding is core when the core aspect predominates and the non-core related aspect, by comparison, is insignificant.")).

[44] *In re Quality Props. LLC,* 2011 WL 6161010, at *6.

the liens, after which the claims allowance process would leave no issues for another court to address.[45] Yet another bankruptcy court found that when the disputes in a removed state law proceeding not only affect the debtor-creditor relationship, but also the contracts that gave rise to the relationship, which is the case here, the proceeding is a core proceeding under the catch-all provision of § 157(b)(2)(O).[46]

Without question, the outcome of this proceeding concerns administration of Debtors' estates, as provided in 28 U.S.C. § 157(b)(2)(A). In order for Debtors to reorganize, this Court must determine whether Debtors own the seized inventory; it then must rule on all remaining issues, including determining whether Redstone, Meged, Zen, and RSR, hold valid, perfected security interests in the seized inventory, and the relative priority of any such secured claims, as provided in 28 U.S.C. § 157(b)(2)(K) and (O). Such rulings go to the heart of administration of Debtors' estates and will undoubtedly cross over into

---

[45] *Id.*

[46] *In re Syed*, Case No. 10-82047-WRS, 2011 WL 1843399, at *2 (Bankr. M.D. Ala. May 13, 2011). Here, Debtors' have alleged a wide variety of claims and defenses pertaining to the enforceability of the Redstone MCA, including usury. *See Big Daddy Guns, Inc. v. Redstone Advance, Inc.*, Adv. Pro. No. 23-01001-KKS, ECF No. 1, pp. 22–53.

allowance or disallowance of claims against the estate, as provided in 28 U.S.C. § 157(b)(2)(A) and (B).

**This action is, at minimum, related to Debtors' bankruptcy cases.**

The Eleventh Circuit has adopted a test for determining whether a civil proceeding is sufficiently related to bankruptcy to confer federal jurisdiction:

> "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." [47]

This proceeding passes that test.

At issue in each adversary proceeding before this Court, including this one, is the extent, validity, and priority of claims against the seized

---

[47] *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). *See also Daake v. C.D. Jones & Co., Inc. (In re C.D. Jones)*, Adv. Pro. No. 15-03002-KKS, 2015 WL 2260707, *4 (Bankr. N.D. Fla. May 12, 2015) (citing and quoting from *In re Fundamental Long Term Care, Inc.*, 501 B.R. 770 (Bankr. M.D. Fla. 2013) ("The key word in the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad." As the Supreme Court recognized in *Celotex Corp.*, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy case.")).

inventory. Redstone's claims are at the heart of these issues; Redstone currently has possession of the seized inventory, and thus a stranglehold on Debtors' ability to reorganize in their Chapter 11 cases.

Redstone's argument is that 1) in the Notice of Removal, Debtors only alleged that this is a core proceeding; 2) for that reason Debtors may not argue anything other than that this is a core proceeding; 3) this is not a core proceeding; and 4) therefore, this Court does not have jurisdiction.[48] This argument is not persuasive. Having determined that Debtors have met their burden of establishing that this Court has subject matter jurisdiction over this proceeding either as core or related to, the Court declines to remand under 28 U.S.C. §1452(b) and now turns to abstention.

## Mandatory abstention is not applicable.

As an alternative to remand, Redstone suggests that this Court must abstain, citing 28 U.S.C. § 1334(c)(2), because this proceeding is related to Debtors' bankruptcy cases. According to Redstone, this adversary proceeding meets all criteria for mandatory abstention set forth in section 1334(c)(2). That statute provides:

---

[48] ECF No. 32, pp. 2–3 (summary of argument).

14

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, *related to a case under title 11 but not arising under title 11 or arising in a case under title 11*, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, *and can be timely adjudicated*, in a State forum of appropriate jurisdiction.[49]

"'The party requesting abstention must prove the existence of each element by a preponderance of the evidence' . . . 'A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements.'"[50] Redstone has failed to prove that this matter can be timely adjudicated in state court or that it could not have been filed in federal court based on diversity jurisdiction.

<u>The issues cannot be timely adjudicated in State court.</u>

Redstone filed its original Complaint commencing the Replevin Action on June 27, 2022, and its Amended Verified Complaint on June 29, 2022, in Leon County, Florida, Circuit Court, almost one year ago as of the date of this Order. Redstone obtained the Writ of Possession on

---

[49] 28 U.S.C. § 1334(c)(2) (emphasis added).

[50] *Franklyn Alexander, DDS, Inc. v. Alt. Debt Portfolios, LLC (In re EZ Pay Servs.)*, 390 B.R. 421, 424 (Bankr. M.D. Fla. 2007) (first quoting *In re Lorax Corp.*, 295 B.R. 83, 90 (Bankr. N.D. Tex. 2003); then quoting *N.Y.C. Emples. Ret. Sys. v. Ebbers (In re Worldcom, Inc. Sec. Litig.)*, 293 B.R. 308, 331 (S.D.N.Y. 2003)).

October 12, 2022, and levied on the inventory on November 14 and December 8, 2022, and March 15, 2023.[51] Although the first levy took place in November of 2022, Redstone did not file its summary judgment motion until January 6, 2023. The state court held its first hearing on that motion on March 28, 2023, after Debtors had filed their Chapter 11 petitions, and a second hearing on that motion on April 13, 2023, after Debtors removed this action.

Redstone presented the state court with a proposed order granting its summary judgment motion, but that proposed order still contained language granting relief against both Debtors.[52] Despite Redstone's insistence that the state court has already ruled on its summary judgment motion,[53] as of April 25, 2023, the state court had before it two competing orders and had not yet decided on either competing order or whether to issue its own.[54]

By contrast, in the seventy-seven (77) days since Debtors filed their Chapter 11 petitions this Court has conducted eleven (11) hearings and

---

[51] ECF No. 33, Ex. 3.

[52] No. 33-1, p. 218.

[53] ECF No. 32, pp. 8–9.

[54] ECF No. 33-1, pp. 225–228 (Redstone's counsel advises the state court that the parties were unable to agree on a proposed order and inquires about scheduling a hearing. The state court's response was: "There doesn't have to be a hearing. Judge Walker will review her notes and both competing orders.").

entered fourteen (14) orders in the administrative Chapter 11 case, along with five (5) hearings and three (3) orders entered in adversary proceedings. In so doing, this Court has read and considered several hundred pages of pleadings and exhibits.

Redstone insists that all that is left for the state court to do is "to enter the final judgment."[55] That is not true. Redstone's summary judgment motion makes no mention of the other creditors.[56] The proposed summary judgment Redstone submitted to the state court would 1) give Redstone a right to possession of the seized inventory, and 2) establish the amount due to Redstone by Debtors and their affiliates.[57] The proposed summary judgment would not 1) determine the relative validity, priority, or extent of Redstone's alleged lien on the seized inventory vis a vis Zen, Meged, or RSR, 2) determine ownership of the seized assets, or 3) grant or deny marshaling as requested by RSR.

[This space intentionally left blank.]

---

[55] ECF No. 32, p. 2.
[56] *Motion for Summary Final Judgment,* ECF No. 33-1, p. 122; ECF No. 33-1, p. 215 (proposed Summary Final Judgment submitted to state court by Redstone that still includes relief against Debtors).
[57] ECF No. 33-1, pp. 214–16.

<u>Federal diversity jurisdiction may exist in this adversary proceeding.</u>

Federal courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000.00 exclusive of interest and costs (clearly the case here) and is between citizens of different states.[58] Redstone avows that there is no diversity jurisdiction because it and Debtors are Florida corporations.[59] This assertion completely ignores that Zen, Meged, and RSR are parties to this proceeding. Meged is apparently based in New York.[60] Zen is listed as a d/b/a of Wynwood Capital Group, Inc.,[61] which converted to an LLC in 2021.[62] The citizenship of the members of Wynwood Capital Group, LLC is not contained in this Court's record.[63] Thus, as of the date of the removal, diversity jurisdiction may have existed in this proceeding.

---

[58] 28 U.S.C. § 1332(a)(1).

[59] ECF No. 32, p. 6.

[60] *See In re Big Daddy Guns, Inc.*, Case No. 23-10053-KKS, Amended Claim No. 10-3, Part 4, UCC-1 Financing Statements, p. 1 ("Meged Funding Group Corp., 12 Zek Ct., Suffern, NY 10901"). *See also Meged Funding Group Corp. v. Big Daddy Guns, Inc.*, Adv. Pro. No. 23-01004-KKS, ECF No. 1, p. 12.

[61] *See In re Big Daddy Guns, Inc.*, Case No. 23-10053-KKS, Amended Claim No. 9-2, Part 1.

[62] The Court takes judicial notice of the records of the Florida Secretary of State. *See* https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=WYNWOODCAPITALGROUP%20L210003398090&aggregateId=fla1-l21000339809-a98154a7-d760-4f38-ac72-c3483c248397&searchTerm=Wynwood%20Capital%20Group&listNameOrder=WYNWOODCAPITALGROUP%20L210003398090 (last visited June 4, 2023).

[63] *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen. . . . To sufficiently allege the citizenships of these unincorporated

**Discretionary abstention and equitable remand are inappropriate.**

Redstone next argues that if mandatory abstention does not apply, the Court should use its discretion to remand pursuant to 28 U.S.C. § 1334(c)(1) or apply equitable remand under 28 U.S.C. § 1452(b).[64] Redstone's analysis of the facts falls short of convincing this Court that either remand or abstention are appropriate.

Courts have assessed the following factors when considering whether to remand a removed proceeding on equitable grounds:

> (1) duplication of judicial resources; (2) uneconomical use of judicial resources; (3) effect of remand on the administration of the bankruptcy estate; (4) case involves questions of state law better addressed by a state court; (5) comity; (6) prejudice to the involuntarily removed parties; (7) lessened possibility of an inconsistent result; and (8) expertise of the court where the action originated.[65]

The majority of these factors, especially factors (1), (2), (3), and (7) weigh against remand. For example, the only ruling the state court made before Debtors filed their Chapter 11 petitions was not definitive, but rather

---

business entities, a party must list the citizenships of all the members of the limited liability company . . . .").

[64] ECF No. 32, pp. 2–3.

[65] *UDX, LLC v. Heavner,* 533 B.R. 511, 519 (M.D.N.C. 2015) (citing and quoting *In re Ram of E.N. Carolina, LLC,* Case No. 13-01125-8-ATS, 2015 WL 6038283, at *3 (Bankr. E.D.N.C. Nov. 14, 2015).

was based on "reasonable probability:"

> The Court finds with *reasonable probability*, that Plaintiff Redstone Advance, Inc. . . . is entitled to the *possession* of the claimed property, pending final adjudication of the claims of the parties based on a finding as to the *probable validity* of the underlying claim alleged in the Verified Amended Complaint . . . against the defendants . . . .[66]

Further, the state court is not concerned with whether Debtors or their non-debtor affiliates own the seized inventory, nor should it be. If this action were remanded to the state court, ownership of the seized assets would be irrelevant because Debtors and their affiliates are parties to the contracts with Redstone and the other creditors. On the other hand, a primary concern of this Court is ownership of the seized inventory. If Debtors own the seized inventory, which they claim they do, then the seized inventory constitutes property of the bankruptcy estate over which this Court has exclusive jurisdiction.[67]

Assuming the seized inventory is property of the Debtors' estates, there are gaps in Redstone's claim to a security interest in those assets. The MCA provides that Redstone "*purchased* twenty-five percent (25%)" of Debtors' and their affiliates' total future accounts receivable, "in

---

[66] *Order Directing Issuance of Writ of Replevin,* ECF No. 33-1, pp. 114–117 (emphasis added).
[67] 11 U.S.C. § 541(a).

exchange for an upfront *purchase price* of $4,000,000.00."[68] Although the MCA contains a section entitled "Security Agreement" that contains the word "inventory,"[69] and Redstone filed a UCC-1 Financing Statement listing "inventory,"[70] nowhere does Redstone connect the dots between a purchase and sale of "Receipts" and a security interest in inventory. Nothing Redstone has filed explains what value Redstone supposedly gave for its alleged security interest in the seized inventory.[71]

## CONCLUSION

Neither remand nor abstention are required or appropriate under the applicable law or these facts. Debtors filed their Chapter 11 petitions in this Court in order to reorganize their financial affairs and deal with multiple creditors in one forum where all parties' rights may be considered and adjudicated. A court needs to sort out who owns the seized

---

[68] Redstone's *Plaintiff's Motion for Summary Final Judgment,* ECF No. 33-1, p. 123, ¶ 2 (emphasis added).

[69] *Id.* at ¶ 3.

[70] *Id.* at p. 124, ¶ 4.

[71] Redstone pled its claims against Debtors and their affiliates based on Florida law. But Section 4.5 of the MCA on which Redstone sued provides that the MCA "shall be governed by and construed exclusively in accordance with the laws of the State of Connecticut . . . ." ECF No. 1-1, p. 13. As to this provision of Article 9, Connecticut and Florida law are identical. Both require value as a prerequisite to having a security interest. *See* Fla. Stat. § 679.2031(2)(a) (2022); Conn. Gen. Stat. § 42a-9-203(b).

inventory, and which creditor(s), if any, hold valid, perfected security interests and in what priority. The court best suited to do so is this one.

For the reasons stated, it is

ORDERED: *Redstone Advance, LLC's [sic] Amended Motion to Remand and Abstain and Memorandum of Law in Support* (ECF No. 32) is DENIED.

DONE and ORDERED on _____June 6, 2023_____.

KAREN K. SPECIE
Chief U.S. Bankruptcy Judge

cc: Counsel for Redstone Advance, Inc. is directed to serve a copy of this Order on interested parties and file a proof of service within 3 days of entry of the Order.